Last case on the calendar, Tobin v. Gluck. May it please the court. David. If you press the button, the podium will come up. You are taller than some of our advocates today. No, no, even the whole podium will come up there. Okay. It's at its highest. Oh, it's at height. Okay. Okay. Thank you. Not the first time, Your Honor. May it please the court. David. For the appellants Ivan Gluck and Phyllis Gluck. The district court awarded a judgment in the amount of $604,500 to the appellee, Ms. Tobin. On this appeal, the Glucks contest $600,000 of that judgment. And we're asking the court to vacate that $600,000 portion of the judgment. The Glucks were the guarantors of a commercial lease between Ms. Tobin and an entity named Biarro, Inc. Biarro is not a party to this action. In 2006, Tobin commenced a holdover proceedings in New York civil court to eject Biarro, the tenant, from that leasehold. In 2007, to resolve that holdover proceeding, the parties entered into a written stipulation in civil court. And the primary legal issue which the district court had to decide was, what is the meaning of paragraph 5 of that stipulation? Now, paragraph 5 of that stipulation says, requires, mandates that the Glucks and Biarro and others, who are not parties to this action, must surrender the caption premises in good condition, order and repair. Broom clean in good condition, order and repair. What is the caption premises that paragraph 5 is talking about? The district court concluded that the caption premises encompasses the entire property at 348 Notion Avenue in Brooklyn, New York, which is where the subject lease was. Land and building, and the problem was that there was contamination on the land. Correct, Your Honor. There was contamination in the, above legal limits, in the groundwater, beneath the soil, beneath the basement of the commercial building. Why isn't the land part of the premises? So the land's not part of the premises because the district court, the fundamental error that the district court made was that it refused to look at the lease to determine what was the scope of the leasehold. The district court said the stipulation itself unambiguously, the caption says premises address 348 Notion Avenue. That means unambiguously the entire premises, the entire property, not the building. What should it have said? The district court should have looked to the lease. What should the language have been to capture the land under your interpretation? Well, we believe the language was correct because the building is located at the address of 3480 Notion Avenue, and it doesn't, the caption does not say premises. Land located at that address as well? Land as well, but the caption doesn't say premises colon 3480 Notion Avenue. It says premises address 3480 Notion Avenue, and certainly both the land in its entirety and the commercial building are located at 3480 Notion Avenue. But had the district court looked at the lease, it would have concluded that the premises, the caption premises of the stipulation. Do you agree that the case law involving leases and insurance contracts includes the land that accompanies a building? Judge Shin, that case law is not relevant to the stipulation. Does the case law say that in general, as a general matter? As a general matter regarding leases. This is a lease. This is not a lease. This is a stipulation. Stipulation resolving a settlement, resolving a dispute about a lease. That's correct. So the stipulation, whatever the caption premises of the stipulation is, turns on what the leasehold is under the lease. And the lease is not what the district court looked at. The district court only looked at the stipulation. We've set forth arguments in our brief, and Ms. Tobin doesn't contest these, that the leasehold clearly only encompasses the building. So if all that was conveyed in the original lease- What do you want us to look at to reach that conclusion? We make the arguments in- I'll be, I'll ask you this. Look, the stipulation refers to the demised premises. Correct. And there says that it's the entire property described as the entire building known as 3480 Nostrand Avenue. But then it adds the demised premises presently has the street address of 3480 Nostrand Avenue together with the building and any improvements thereon. That suggests that the demised premises reaches beyond the building. I think from my understanding is, Your Honor, that that's a common term. Well, yes, but the problem with that for you is that the common meaning of premises, both in the dictionary and in New York law, is the property and the land. So unless the lease, unless the settlement, the stipulation is specific in excluding the land, one would think that this language from the stipulation is consistent with the general broader New York meaning. I'm not sure what I'm supposed to look at in the stipulation that suggests the parties were limiting it to the building. Your Honor, I think you're reading from the lease when you speak about the demised premises. So the lease, section 7.3 and section 3.4 of the lease are only compatible with an interpretation of demised premises that encompasses only the building. And we set those arguments forth in our brief. The section, for example, section 7.3 of the lease describes improvements and modifications to the exterior and interior wall of the demised, exterior outer wall of the demised premises. Right, because that's part of the demised premises. Nothing in that language suggests that that's the extent of the demised premises. Well, that wouldn't be the outer wall of the premises. That would be a wall set back from the border of the premises. So it certainly wouldn't be described as the outer wall of the premises. In fact, there was no wall at the premises border. You had a building located encompassed by a parking lot in front, some yard in the back, some yard on the side. So the description of an outer wall of the demised premises is inconsistent with Ms. Tobin's interpretation. Similarly, section 3.4 of the lease talks about improvements to the interior and exterior portions of the demised premises. That's clearly referring to something that can be improved, decorations, modifications, improvements, alterations to the exterior and interior portions of the demised premises. What's the exterior and interior portions that we're talking about other than the building? Does the lease contain a provision requiring indemnity for release of hazardous substances on the property as well that we might look at in assessing relative liabilities here? It may, but the district court dismissed all claims under the lease. The district court, what happened is Ms. Tobin originally brought claims for various violations of the lease. The district court dismissed those on summary judgment. And then Ms. Tobin filed an amended complaint bringing claims solely under the stipulation, and that's what we're talking about here. So the liability would have to come from the stipulation itself. I see, but in terms of kind of looking at the overall picture, you're arguing you should look at the lease. To the extent the lease creates obligations with respect to release of hazardous substances, which would end up, for example, in the groundwater and the soil. It suggests to me that the broader rule that a lease of the building typically encompasses the premises was what was contemplated by the lease. So in the lease, there were provisions that cut both in your favor and against you. Well, Judge, I'm not necessarily entirely sure that that would be a good assumption to make, because even if the lease was only of the building, the parties could have contracted that the landlord owned. There's no issue that the landlord, Ms. Tobin, owned the entire premises. The parties could have contracted that there would be liability for any chemicals that leaked out of the building into the premises. There is an environmental indemnity provision on page A481, where the tenant agrees to indemnify the landlord for environmental issues. Including the release of hazardous substances? That's correct, Your Honor, but I don't think that goes to the question of what the scope of the demised premises is. Is there not relevant background to the question of interpreting the settlement, the stipulation? Your Honor, I wouldn't say it's irrelevant, but none of this is in the record. None of this was raised before the lower court. What the lower court decided is the stipulation unambiguously refers to the entire property, and the district court said we cannot look at the lease because the parole evidence rule applies. Even Ms. Tobin's brief contends, no, the lease is relevant here because the premises that the parties were settling, the dispute was over, the leasehold. So we have to look at the leasehold to see that the law in the circuit is clear. Courts can't look at contracts in a vacuum. You have to consider the circumstances and context of the contract's execution, and if you look at the circumstances and context of this contract's execution, what you're left with is Tobin conveyed an interest in property to the Glucks, and the Glucks, there was a dispute about that interest in property, and then the Glucks settled that dispute, and the dispute talks about a premises. That premises is obviously the same premises that was conveyed to them originally. The district court came out differently, but we believe that was a legal error. Thank you. All right. I know you want to reserve time in rebuttal. Let's hear from your adversary. May it please the Court. Robert Goldstein, Epstein, Becker, and Green for Appellees. I'll pick up on one point that Your Honors just mentioned, which is the underlying lease, which is not part of the stipulation of settlement and really doesn't offer, even if it were to be considered in construing the settlement agreement, which we don't believe it should be, it doesn't provide any real guidance because it doesn't use the same terminology, and to the extent it does impart any obligations, Your Honors read the provision, which specifically says that the tenant will be responsible for the costs and expenses of paying for proper bodily injury and property damage as a result of contamination of the demised premises or neighboring property. So the lease itself is completely consistent with the district court's construction of the stipulation of settlement. But again, we maintain you don't even have to go to the lease, and in fact, you shouldn't have to go to the lease. You don't want us to go to the lease? No. Look, I don't think you can go to the lease because there's no ambiguity in the stipulation of settlement. However, if you were to look at the lease, there's nothing in there that would limit the scope of captioned premises in the stipulation of settlement. To the contrary, the underlying lease is perfectly consistent with that. It does not use the same terminology. So it can't be, it's not particularly helpful in defining captioned premises beyond what's in the stipulation of settlement, but it certainly makes clear that even under the lease, the tenants were responsible and had to indemnify the owner for any property damage, including environmental contamination. The stipulation of settlement, which should be viewed in its four corners, has no reference whatsoever to any kind of limitation to just a building or anything less than the full property. So it's very clear since, I believe, 1867 in New York, that unless an agreement specifically excludes a portion of the premises, or specifically limits the premises to a building or some smaller portion of the land, it's presumptively inclusive of all the property. That's what we have here. There's no ambiguity, and it would be consistent with the lease even if the lease were to be considered. I guess Pelland has made a couple of other arguments that I'll just briefly address, even though it hasn't come up. In terms of the court's determination of damages, the court spent a great deal of time examining the expert testimony that plaintiff proffered at trial, as well as the defendant's or Pelland's testimony at trial, made a factual determination regarding the $600,000 in damages. We think that's fully supported by the record. It's subject to a clearly erroneous standard. It was a factual finding and amply supported by the record. Unless you have any other questions? Do you want to address your cross appeal that you shouldn't be required to have the security deposit offset? Certainly. I think that's really a pure matter of whether the clerks have standing to get that security deposit back. BRO is a separate legal entity. And BRO is the entity that's entitled to a return of the security deposit. There's no allegation of alter ego or piercing the corporate veil in this context. BRO- Not so much requiring them to get the security deposit back. It's that to the extent you've held on to the security deposit, the district court thought that the damages it had originally calculated were overstated by that amount because you basically got the security deposit to compensate you for $17,421 of damages. Why is that not an appropriate way for the district court to have looked at it? It was giving the defendants a windfall because they were getting a credit that they didn't deserve. And frankly, it also exposed the plaintiffs to another action by BRO saying, you were supposed to give that money to what? To me, BRO, not to the Glucks. Why doesn't the district court finding that the defendants effectively acting for BRO are not contractually entitled to the return of the security deposit because they breached the stipulation preclude any colorable claim, including by BRO, to recover the deposit, necessarily leaving it in your client's hands? BRO was not a party to the agreement, but BRO had the right. If BRO wanted to be in this agreement, participate in the stipulation of settlement, it had that right. The Glucks controlled BRO. Do you think you would have to pay the security deposit back to BRO? I believe that BRO would have a claim for the security deposit. How is that possible? It breached the lease. That's why there's the stipulation. Based on the court's determination of unjust enrichment, I believe that that logic would apply to BRO if BRO were a party here. And I accept that that is a rational conclusion. It's really a matter of standing since BRO chose not to be a party to this action. Thank you. Mr. Salinik, you did reserve some time. Insofar as Ms. Tobin, and I'm not sure if she is or not, is trying to assert claims for liability under the lease, under any provisions of the lease requiring cleanup of hazardous substances, those can't be asserted now in front of this circuit court. They weren't asserted in the complaint. They weren't alleged in the complaint. The complaint's sole cause of action, it was one cause of action, was for violations of the terms of the stipulation. The court pointed out that there is a provision which speaks about the demised premises and the building separately as far as environmental indemnity. I don't think we've dealt with this issue before in the lower court. I don't think that the word building, capitalized term building, appears elsewhere in the lease. I think that was simply a drafting error. 3.4 and 7.3 can only be read as we submit as applying solely to the building. And the district court concluded as a matter of law that we can't look at the lease. We can't resort to the lease. At the very least, this court can make a factual determination as to what the lease meant to say. Is it the entire property or is it only the building? As far as the cross-claim goes, the court is correct that when the court's decision that the Glucks violated the stipulation implicitly acknowledges that BRO also violated the stipulation. They're both signatories on the stipulation. They had the same obligations under Paragraph 5. So therefore, the district court rightly held that Tobin would be unjustly enriched if she was able to retain both the $600,000 recovery for damages for the environmental contamination and the $17,000 which was put up by BRO as security against any breach of the stipulation. All right, thank you all very much. We'll take the case under advisement. That concludes our calendar. We stand adjourned. Court is adjourned.